UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

DANIEL M. CHARLESTON, and
TYIESHA I. CHARLESTON,

    Debtors.
_____/

Case No. 17-57711

Chapter 7

Judge Thomas J. Tucker

**OPINION AND ORDER REGARDING FEE APPLICATIONS**

**I. Introduction**

This case is before the Court on the following fee applications:

1. The fee application of Dakmak Peurach, P.C., former attorneys for the Chapter 7 Trustee, filed on January 27, 2022, entitled "First and Final Fee Application for Allowance of Compensation for Attorneys for the Trustee for the Period of Time from March 5, 2018 Through July 17, 2019," (Docket # 90), seeking fees in the voluntarily-reduced amount of $19,350.00 and expenses in the amount of $72.77;

2. The fee application of the successor attorneys for the Chapter 7 Trustee, filed on January 27, 2022, entitled "Final Application of Bernardi, Ronayne & Glusac, P.C., For Award of Fees and Reimbursement of Expenses As Attorneys for Trustee" (Docket # 91), seeking fees in the voluntarily-reduced amount of $3,450.00, and expenses in the amount of $16.83; and

3. The fee application of the Chapter 7 Trustee, filed on January 30, 2022, in the document entitled "Trustee Application for Final Compensation and Reimbursement of Expenses" (Docket # 92), seeking fees in the amount of $4,763.43 and expenses in the amount of $75.00.

(The fee applicants listed above are referred to below as the "Applicants.")

No timely objections to the fee applications were filed. But the Court concluded that a hearing was necessary. The Court stated the following in the Order setting the hearing:

> The Court notes that the two requested attorney fees plus the Trustee fee requested total $27,563.43, plus reimbursement of expenses. By comparison, it appears from the Trustee's final report and the Trustee's fee application that the Applicants' efforts benefitted the estate, at most, in the amount of $40,134.33 (the

total receipts listed on the Trustee's final report, and the "net estate" amount stated in ¶ 4 of the Trustee's fee application). Based on these numbers, the fees requested by the Applicants, if approved, would amount to 68.7% of the amount collected with the assistance of Applicants' services.

The Court notes that the proposed distribution in the Trustee's final report, and paragraph 4 of the Trustee's fee application (Docket # 92), do not appear to include all of the estate assets or all of the attorney fees in this case. They do not include all of the gross settlement amount from the products liability claim that was approved by the Court's Order filed August 23, 2021 (Docket # 82), which was a total of $98,807.55. That total amount, minus the Debtor Tyiesha Charleston's allowed and paid exemption of $15,000.00, equals $83,807.55. That appears to be the correct amount of the realized assets of the estate in this bankruptcy case. The proposed distribution in the Trustee's final report also does not list the attorney fees approved and paid to the special counsel who represented the Trustee in the products liability case that was settled. The fee application filed by Bernardi, Ronayne & Glusac, P.C. (Docket # 91) states, in paragraph 4(c), that those special counsel fees were "[a]pproximately $50,500.00." Actually, the fees allowed and paid to special counsel total $34,582.64, according to the numbers in Exhibit C to the settlement motion filed at Docket # 80 (at pdf page 26 of 26) (public access restricted). Adding the special counsel fees already paid ($34,582.64) to the total of the fees now requested by the Applicants ($27,562.43) would equal total fees of $62,145.07. That total fee amount would equal 74.2% of the total estate assets of $83,807.55.

The purpose of the hearing is to determine whether the requested fee amounts should be reduced, given the amount of the benefit to the estate in this case. *See, e.g., In re Randle*, [637 B.R. 7 (Bankr. E.D. Mich. 2022)]; *In re Meda*, 634 B.R. 946 (Bankr. E.D. Mich. 2021); *In re The Village Apothecary, Inc.*, 626 B.R. 893 (Bankr. E.D. Mich. 2021), *aff'd*., 2:21-cv-10892, 2021 WL 2102598 (E.D. Mich. May 25, 2021); *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 887-89 (Bankr. W.D. Ky. 1996); 11 U.S.C. §§ 330(a)(2), 330(a)(3)(C), 330(a)(3)(D), 330(a)(3)(F), 330(a)(4)(A)(ii).[1]

---

[1] "Order Setting Hearing on Fee Applications" (Docket # 96) (the "Order Setting Hearing") (footnotes omitted).

The Court held the hearing, by telephone, on April 20, 2022. The lead attorney for the Chapter 7 Trustee appeared at the hearing, representing all of the Applicants. At the end of the hearing, the Court took the fee applications under advisement.

The Court has reviewed and considered all of the fee applications, the supplemental statement filed by the Applicants on April 14, 2022 in support of the fee applications,[2] and the oral argument made on behalf of the Applicants during the hearing. The Court now will rule on the fee applications.

**II. Discussion**

The Court has discussed the law governing fee applications in Chapter 7 cases in detail, in an opinion published last year. *See In re Village Apothecary, Inc.*, 626 B.R. 893 (Bankr. E.D. Mich. 2021), *aff'd.*, No. 2:21-cv-10892, 2021 WL 2102598 (E.D. Mich. May 25, 2021). Rather than repeat that lengthy discussion, the Court incorporates it by reference here.

Applying the framework used in *Village Apothecary*, the Court finds and concludes the following.

First, the Court calculates the "lodestar amount" with respect to the two attorney fee applications, which were filed by the Trustee's former attorneys, Dakmak Peurach, P.C., and by the Trustee's successor attorneys, Bernardi, Ronayne & Glusac, P.C. The Court finds that the lodestar amount is the amount requested in the applications, namely $19,350.00 for Dakmak Peurach, P.C., and $3,450.00 for Bernardi, Ronayne & Glusac, P.C., for a total lodestar amount of $22,800.00. This is the product of the total time spent by the Chapter 7 Trustee's counsel times the hourly rates charged by counsel, all as reflected in the itemization of fees that was filed

---

[2] Docket # 99.

3

17-57711-tjt    Doc 101    Filed 05/17/22    Entered 05/17/22 12:04:02    Page 3 of 11

with the applications,[3] reduced to the extent of the substantial voluntary reductions reflected in the fee applications.

Second, there is no comparable "lodestar amount" calculation to make with respect to the Trustee Fee Application, because the fee requested by the Trustee is calculated as a commission, applying the percentage maximums contained in 11 U.S.C. § 326(a) to the disbursements by the Trustee to parties in interest in this case other than the Debtor. *See* 11 U.S.C. §§ 330(a)(7), 326(a). The fee amount calculated under the §326(a) formula is the *maximum* amount that can be awarded under §§ 326(a) and 330(a)(7). But under § 326(a), the Trustee's fee under these sections still must be "reasonable compensation under section 330" of the Code.

In this case the Trustee requests a fee of $4,763.43, based on applying the § 326(a) formula to a "net estate" amount stated in the application of $40,134.33.[4] As stated in the Court's Order setting the hearing on the fee applications, quoted above, the $40,134.33 "net estate" amount stated in the Trustee's fee application appears to be understated; the correct amount appears to be $83,807.55. Based on that amount, the Trustee's fee application seeks a fee that is substantially lower than what the § 326(a) formula would yield.

Third, with respect to the fee applications of both the Trustee and the Trustee's counsel, and under 11 U.S.C. § 330, the Court must determine what is a "reasonable" fee amount, after considering all of the relevant factors set forth in §§ 330(a)(3) and 330(a)(4), and the Court may, in its discretion, consider the other factors identified by the United States Court of Appeals for the Sixth Circuit in *In re Boddy*, 950 F.2d 334, 338 (6th Cir. 1991). In addition to the lodestar

---

[3] *See* Docket # 90, Exs. 3, 4; Docket # 91, Exs. 4, 5.

[4] *See* Docket # 92.

amount, the Court may, in its discretion, consider the following factors, among others: "the novelty and difficulty of the issues, the special skills of counsel, **the results obtained**, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area." *Boddy*, 950 F.2d at 338 (citation omitted) (emphasis added).

Fourth, the Court has considered all of the factors in §§ 330(a)(3) and 330(a)(4), and all of the factors identified in *Boddy*, and has carefully considered all of the written and oral arguments made by the Applicants in support of their fee applications. The Court appreciates that the Applicants' fee applications all reflect substantial voluntary reductions in the amount of fees requested. But the fees requested still are too high. The Court has determined that the total fees requested by the Trustee and his counsel are higher than what is reasonable, and should be reduced to the extent described below. In making this determination, the Court is exercising its discretion to make downward adjustments to the fees requested, including the lodestar fee amount of the Trustee's counsel. Under *Boddy*, the Court has discretion to do so based on a consideration of "the results obtained" in this case by the Trustee and his counsel. *See, e.g., Village Apothecary*, 626 B.R. at 898-99, 904-05 (discussing the *Boddy* case).

In considering "the results obtained" in this case, the Court has considered both "the amount in controversy and the results obtained." *See id.* at 904, 909-15. The Court has done this even though, in the Court's view, it is not necessary to consider the "amount in controversy" when considering the "results obtained." For the reasons suggested by this Court in *Village Apothecary*, under *Boddy*, it is permissible for the Court to consider the "results obtained" without considering the "amount in controversy." *See Village Apothecary*, 626 B.R. at 904-05,

5

906;⁵ *see also In re Meda*, 634 B.R. 946, 948-49 (Bankr. E.D. Mich. 2021); *In re Randle*, 637 B.R. 7, 10 (Bankr. E.D. Mich. 2022).

In this case, the result obtained by the Trustee and his counsel was $83,807.55. That is the correct amount of the realized, non-exempt assets of the estate in this bankruptcy case, as explained in the Court's March 9, 2022 Order, quoted above.⁶ That entire amount was from the settlement of the products liability claim that was approved by the Court's Order filed August 23, 2021.⁷ There were no other assets recovered by the Trustee in this case.

As noted above, the two requested attorney fees plus the Trustee fee requested by the Applicants total $27,563.43, plus reimbursement of expenses. In addition to those requested fees, the contingent fee allowed and paid to the Trustee's special counsel in the products liability matter was $34,582.64.⁸ Adding the special counsel fees already paid ($34,582.64) to the total of the fees now requested by the Applicants ($27,562.43) would equal total fees of $62,145.07. That total fee amount would equal 74.2% of the total estate assets of $83,807.55.

Considering the results obtained, the Court concludes that the total amount of the fees requested by the Applicants in this case, $27,562.43, is excessive. As noted above, the total of

---

⁵ There is, however, at least one decision by the district court in this district that held otherwise. That is the decision of the district court on the second appeal in the *Village Apothecary* case. *See* 626 B.R. at 904. This Court is not bound by that district court decision in this case, as a matter of *stare decisis*. *See In re Wylie*, 630 B.R. 68, 73 (Bankr. E.D. Mich. 2021) and cases cited therein; *In re Harbin*, 626 B.R. 888, 890 n.1 (Bankr. E.D. Mich. 2021) and cases cited therein. This Court respectfully disagrees with the district court's decision in *Village Apothecary* on this issue. *See also Meda*, 634 B.R. at 949 n. 3; *Randle*, 637 B.R. at 10 n. 4.

⁶ Docket # 96 at 2.

⁷ Docket # 82.

⁸ *See* Order Setting Hearing at 2 (record citations omitted).

all attorney fees in this case, if the Applicants' fee requests are approved, would amount to 74.2% of the amount collected with the assistance of Applicants' services. And, as the Trustee's final report shows, if the fees are allowed in the full amount requested, the two non-priority unsecured creditors in this case will receive a distribution equal to only 18.7% of their allowed claims.[9]

"The bankruptcy court has 'broad discretion in determining attorney fees.'" *Village Apothecary*, 626 B.R. at 913 (citations omitted). The Court is convinced that it may, and should, in its discretion, reduce the total of the fees to be allowed in this case for the Applicants.

The Court has considered the possibility of reducing the total of fees in this case to an aggregate amount no more than $41,903.78, which is 50% of the total amount recovered for the bankruptcy estate by the Trustee and his counsel (including his special counsel) in this case. That would leave a total of $7,321.14 for the fees of the Applicants ($41,903.78 minus special counsel's fee of $34,582.64). The Court considers that amount for fees to be too small. This is especially so considering the extraordinary and very time-consuming difficulties caused by the Debtors' lack of cooperation, and the Debtors' actions that impeded the Trustee's efforts to investigate and administer the estate's claims in this case. This is described in detail in the supplemental statement filed by the Applicants.[10]

The Court also considers that in the March 9, 2022 Order setting the hearing on the fee

---

[9] *See* Trustee's Final Report (Docket # 93) at pdf p. 11.

[10] *See* Statement in Support of Fee Applications (Docket # 98) at ¶ 7 (describing events that pre-date the undersigned judge's involvement in this case). This case was originally assigned to Judge Marci McIvor. The case was reassigned to the undersigned judge on December 20, 2019, because of Judge McIvor's retirement. *See* Order of the Court for Reassignment of Judge (Docket # 76).

7

17-57711-tjt    Doc 101    Filed 05/17/22    Entered 05/17/22 12:04:02    Page 7 of 11

applications, the Court stated:

> The Court is willing, without a hearing, to approve fees of the Applicants in this case that do not total, in the aggregate, more than 50% of the gross amount of the estate funds disclosed in the Trustee's final report, *i.e.*, $20,067.16 (50% of 40,134.33). But unless the Applicants file a stipulation agreeing to that, the hearing will be required.[11]

The Trustee's final report and his fee application stated that the net estate on which the Trustee's fee was computed, under 11 U.S.C. § 326, was $40,134.33. This amount was calculated by the Trustee based on the net funds received from the settlement of the products liability case, which reflected the subtraction of fees and expenses, including special counsel's allowed contingent fee, and which also reflected the subtraction of the $15,000.00 exemption amount paid to the Debtor.

Having stated in the Order Setting Hearing that the Court was willing to approve fees of the Applicants in a reduced aggregate amount of $20,067.16, the Court will not reduce the Applicants aggregate fees to a lower amount. This is so even though a lower aggregate amount might be justified, in the Court's discretion.

In its discretion, the Court will reduce the total of all fees to be allowed to the Applicants in this case to an aggregate amount of $20,067.16.

The Court views this as fair to the Applicants (the Trustee and the Trustee's general counsel). And, in the Court's judgment, this "'strikes a fair and appropriate balance between the need to pay the bankruptcy estate's professionals a reasonable fee for their work, while at the same time making sure that 'the creditors in this case may receive a fair and meaningful

---

[11] Order Setting Hearing at 2 n. 2.

distribution on their allowed claims.'"" *Village Apothecary*, 626 B.R. at 913.

The result is the same if the Court considers and makes a comparison of the "amount in controversy" in this bankruptcy case with the "results obtained." Such a comparison can be done in at least two ways: (1) first, by comparing the $83,807.55 results obtained with the amount the Trustee *sought* to obtain in pursuing the two claims he investigated and/or pursued in this case, *see Village Apothecary*, 626 B.R. at 909-11; or, (2) second and alternatively, by comparing the amount the creditors other than the Trustee and his counsel (the "other creditors") will receive with the total amount of the other creditors' allowed claims in this case. *See id.* at 911.

As for the first such measure, the record shows that the Trustee investigated and/or pursued two claims that were listed in the Debtor's Schedule A/B, both of which the Debtor listed with a value of "[u]nknown":[12] the products liability claim that ultimately was settled, and a claim the Debtor alleged she had against her former employer. The record is sparse with respect to showing the amount in controversy in these claims. The product liability claim was part of a class action against Bayer Corporation.[13] The Applicants' attorney stated during the hearing that the Trustee did not know what sort of recovery to expect on the claim, other than a possible range of $50,000 to $120,000. (The actual gross amount of the settlement was $98,807.55). The claim against the Debtor's former employer was a wrongful discharge claim. After investigation, the Trustee and his counsel determined that claim "to be of little or no value to the estate."[14]

---

[12] Docket # 1.

[13] Dakmak Peurach, P.C. Fee Application (Docket # 90) at 2, ¶ 3.A.

[14] *Id.* at 4, ¶ 3.C.

9

17-57711-tjt    Doc 101    Filed 05/17/22    Entered 05/17/22 12:04:02    Page 9 of 11

The Court is better able to compare the "results obtained" with the "amount in controversy" in the second, alternative way described above. The Court finds from the Chapter 7 Trustee's Final Report that the total amount of the two allowed unsecured claims in this case, other than the administrative claims of the Trustee and his attorneys for fees and expenses, is $65,472.87. If the total of these creditors' claims is considered the "amount in controversy," then "the appropriate measure of the 'results obtained' to compare it to would be the total amount to be paid to those creditors, after payment of the allowed fees and expenses of the Trustee and his attorneys. *See Village Apothecary*, 626 B.R. at 911. Measured in this way, and as the Trustee's Final Report shows, the "results obtained" for the unsecured creditors would be only 18.7% of their allowed claims.[15]

Given these numbers, and regardless of which method is used to compare the "results obtained" with the "amount in controversy," the Court reiterates its conclusion that the fees of the Applicants to be allowed in this case should be reduced to no more than an aggregate amount of $20,067.16.

## III. Conclusion and Order

For the reasons stated above,

---

[15] In the Supplement filed before the hearing, and also during the hearing, counsel for the Applicants argued that the much larger of the two unsecured claims (the $64,942.50 claim filed by the U.S. Department of Education) is a student loan debt that is nondischargeable 11 U.S.C. § 523(a)(8). Counsel argues that because that creditor's unpaid claim will survive the Debtor's discharge, that creditor will be able to continue trying to collect on its claim against the Debtor. The Court has considered this argument in making its fee decision today. But it does not persuade the Court to award fees in an amount greater than the reduced aggregate amount stated in this Opinion and Order. Among the reasons for this are that: (1) there has not yet been any determination by this Court that this student loan debt is nondischargeable, as not creating an "undue hardship" under § 523(a)(8); and (2) even if the debt is nondischargeable, there is no guarantee that the creditor will be able to collect any appreciable amount of the debt from the Debtor.

IT IS ORDERED that:

1. The Court will allow the expenses requested in the fee applications of the Applicants (Docket ## 90, 91, and 92) in the full amounts requested, but the Court will allow fees only in amounts that, in the aggregate, do not exceed $20,067.16. The allowance of fees and expenses will be made by separate orders, to be entered at a future date, after the filing of a stipulation, or the passage of the time period, described in Paragraph 2 below.

2. The fee Applicants may, if they wish, file a stipulation agreeing to a specific allocation among themselves of the fees to be allowed in this case.[16] Any such stipulation must be filed no later than May 24, 2022. And upon filing any such stipulation, the fee applicants must submit proposed orders that are consistent with the stipulation.

3. If the fee applicants do not timely file a stipulation of the type described in Paragraph 2 above, the Court may schedule a further hearing concerning the appropriate allocation of fees to be made in this case, or may file an order resolving that issue without first holding such a hearing.

**Signed on May 17, 2022**



/s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge

---

[16] In any such stipulation, of course, the fee applicants may, if they wish, reserve their right to appeal the Court's reduction of their fees from the full amounts requested in the fee applications. The Court notes, however, that during the hearing the attorney for the fee Applicants stated that he was willing to abide by whatever the Court rules with respect to the fee applications.